Wright v. Colvin Good morning. I'm Mark Schneider. I represent Benjalee Wright. The ALJ in that Mr. Wright could do light work and light work under the law requires the ability to lift up to 20 pounds occasionally and up to 10 pounds frequently and it requires a good deal of walking or standing which is defined as six to eight hours a day. In this case my client would have been and should do his closely approaching advanced age and at very best he could only perform sedentary work. In fact he did not have the residual functional capacity the RFC to perform any work. Could you just identify what is the evidence you're relying on where a doctor says he couldn't do the the 20 pounds in the six hours and so on? Well there is no doctor that said that he could. No no no that's I understand that but the burden is you agree that the burden is on the applicant to show that he is disabled. Yes. So I'm just trying to you know it can be I'm not saying there needs to be a very specific statement but tell me what you're relying on in the medical records that demonstrates that he would lack that capacity. Sure well there were MRIs that showed that he did have nerve impingements which we know and the law shows can cause pain. Dr. Arguelas the treating neurosurgeon found that he had fairly severely severe spinal spondylosis that could be expected to produce significant back pain. But he said that Dr. Arguelas if that's how you say his name he said that he could not the only thing he couldn't do was no heavy lifting. He didn't say he couldn't do light duty work of some type right? That's correct. And he said that surgery wasn't indicated too right? He said that surgery would be an option but he didn't recommend it to my client. But we look at. He recommended it or he said get a second? No no he didn't recommend it. He said it's an option but I don't I do not recommend it and my client did not have it. But you the case comes down to the conditions that the doctors that Dr. Arguelas in particular discussed. He had severe lateral and central stenosis which is a narrowing of the spinal column. He had four amenal narrowing which again would impinge on the the nerves and would cause pain. So what do we look to to say that the explicit or discrediting of your client's credibility was wrong? Yes yes when you have an objective cause for pain and the doctors say you have that you would need an explicit explanation of why the person is not credible. In this case my client. His treating internal medicine doctor Dr. Wolzinski. Yeah. Went through his office notes the various visits he had and he said things like he had normal gait. I had some had some back pain but he seemed to stand directly okay and could walk well. I mean it seemed like it wasn't consistent with the type of the extent of the pain your client testified about that. So where is it in the record that supports how severe he said his back problem was? Well Dr. Arguelas said he had severe pain and or it would be expected to produce the pain. Dr. Wolzinski did prescribe him strong narcotic pain medications. He did find that he had pain across his back. Several doctors I believe Dr. Arguelas and Dr. Dispo found he had a positive straight leg raise which is indicative of a lumbar radiculopathy which is pain going into your legs. Dr. Wasif the commissioner's consultant noted that he had severe that he had lumbar radiculopathy and he couldn't walk on his heels and his toes and Dr. Roa the pain specialist who saw him within a month after the decision found that he had claudication which means he had a difficult time walking. Am I wrong in thinking that the question of how much pain and what it kept him from doing? Yeah and if you look at what he testified to he really had he was severely limited in his daily activities. He needed help doing things. He had to sit down. He couldn't vacuum or do laundry. He had to sit down for three to four hours a day and there was no reason to discredit him. It was consistent with the record. He was never internally inconsistent. His doctors didn't find that he was exaggerating. The ALJ relied on incorrect legal factors to discredit him. The fact he didn't enhance his very good work history and here's a guy who went back to work for two and a half weeks and tried to work and wasn't able to do it and then he took another job for three weeks a sedentary job and couldn't do it. He applied for unemployment which is what people you're allowed to do that until you're officially found to be disabled and he held that against him. Everybody who gets unemployment has to report they're able to work and in New York people do that because they don't get short-term disability. He tested positive one time for benzodiazepine and his doctor kept on treating him. They didn't do another test. He couldn't afford to get further treatment and when he did get the further treatment we see he did get spinal injections and it was further limited. The ALJ incorrectly found that he was laid off for business reasons. He never testified to that. He testified he was laid off. You can't just presume. People use a term like laid off when you're you can't work for any reason. So that no doctor ever said he was not credible. He had this strong support with an MRI and straight leg raises to support his pain. And additionally the ALJ gave way too much weight to Dr. Wasif, his consultant. Dr. Wasif is a pediatrician and not a neurosurgeon and he said he had moderate limitations in walking and standing. That does not mean you cannot you can stand and walk for eight hours. He testified that he couldn't. Dr. Arguelles said he maybe could do moderate activity and again moderate activity as a matter of law does not support a conclusion. You can do light work on a full-time basis. You've reserved three minutes for a moment. Do you want to use some of that? No no I will come back in a few minutes. Thank you. Thank you. Ms. Zurbrug. You did your honor. Thank you. The podium will come up some if that's okay. Thank you. May it please the court. My name is Catherine Zurbrug. I represent the appellee, the Acting Commissioner of Social Security. As your honors have correctly identified, there's no evidence in the record to suggest that this claimant was not capable of light work as identified in the in the residual functional capacity determination by the ALJ. The ALJ cited substantial evidence in support of his findings and determined that Wright was capable of light work with some postural limitations. The ALJ relied on the benign findings in the clinical evidence by the treating doctors as well as the examination findings of consultative examiner Dr. Wassef, which again showed benign findings. Should we make something of the fact, as your adversary pointed out, that the consultant, the consultative physician was a pediatrician whereas the problems that the patient or that the applicant here was suffering obviously seemed to be neurological. Yes, your honor. In this case, in any case, the weight to be given to a physician opinion depends on many factors, one of which is the specialization. So here, the fact that Dr. Wassef was a pediatrician is one factor to take into account. However, the evidence from Dr. Wassef, including his examination findings and his opinion with regards to Wright's limitations, were consistent with the other evidence in the record, including the evidence from the specialist Dr. Arguelles, who found that repeated benign examination findings and didn't indicate that Wright couldn't do light work. So here, the fact that Dr. Wassef was a pediatrician alone is no reason to discount his opinion. Could you identify what are the specific things that the ALJ relied on in partially discrediting the applicant's testimony about his pain? I can. The ALJ relied on numerous factors in relation to Wright's work history, and he noted that there was work activity after the alleged onset date of the disability. Mr. Wright alleged that he was disabled as of December 2013, but he had work which he admitted was heavy construction work for 12 to 14 hour days, requiring him to lift over a hundred pounds in April of 2014 for, he said, two and a half months. There is some conflicting evidence in the record as to how long that lasted, but taking Mr. Wright's testimony, two and a half weeks, sorry, I may have said months, two and a half weeks of that type of work, and after that he did another job that required him to assist people with disabilities. He testified he was getting in and out of cars, doing hiking, fishing, and basically helping people with all of their daily activities. The ALJ noted that that came in the summer of 2014, so all this is substantially after the time that he was alleging he was disabled. The ALJ also admitted during the period that he was disabled, in connection with his receipt of unemployment benefits, that he was ready, willing, and able to work. Now, the ALJ is noting that's inconsistent with his statement to the Social Security Administration that he was disabled as of December 2013, so that's a credibility issue as well. The ALJ also noted the inconsistency between Wright's complaints and the objective evidence in the clinical findings of the treating that we've said were essentially benign findings, where there really is no evidence in the clinical examinations of severe impairment. The ALJ mentioned Wright's drug use in the opinion, but there's no evidence that the ALJ found that the testing positive for benzodiazepines was a dispositive issue in terms of credibility. However, the fact that he mentioned it, if he had legitimate thing to consider in terms of a claimant's credibility, courts have held that substance abuse is a proper consideration in terms of the claimant's credibility. And the ALJ also considered Mr. Wright's statements during the period of disability to his treating doctor that his pain was at its least when he was occupied with work activities. That's a general summary of the factors the ALJ considered in the credibility determination. So getting back to the functional capacity determination, the ALJ did cite substantial evidence in the form of the clinical findings and the consultative examiner opinion and examination findings. The ALJ also cited substantial evidence in support of his mental residual functional capacity assessment that Wright was capable of simple work and could do complex work only under supervision. And he also limited Wright to frequent contact with others and to no more than frequent changes in the work setting. Again, the ALJ cited substantial evidence in support of this decision, of this finding, noting that the consultative examiner, Dr. Melcher, had had a benign mental status examination with Mr. Wright and she had, and the limitations that he found in the mental residual functional capacity mirrored those that Dr. Melcher set forth, with the exception of a statement in her opinion that stated that Wright's symptoms could significantly interfere with his ability to function on a daily basis. The ALJ explained he didn't find that to be supported by the evidence, but he did adopt all the other limitations in Dr. Melcher's examination, which included that he had limitations, mild to moderate limitations in learning new tasks, performing complex tasks independently, relating with others, and appropriately dealing with stress. In support of the mental residual functional capacity assessment, he also cited the opinion of state agency Dr. Farron, who had reviewed all the evidence and determined that Wright was capable of work, was capable of maintaining attention and concentration, and was capable of the mental demands of work. We discussed the credibility assessment and after undertaking the credibility assessment, the ALJ determined that Wright was not able to do his past work of heavy construction, given the residual functional capacity assessment, and he moved on to step five of the sequential evaluation. He relied on the testimony of a vocational expert who testified that there were jobs in significant numbers in the national economy that a person of Wright's age, education, vocational profile, and residual functional capacity could perform. The vocational expert's testimony was based on a hypothetical question that reflected the limitations that were credibly established in the evidence. Wright has argued that the ALJ incorrectly declined to rely on responses to hypotheticals that were not supported by evidence, that were to the vocational expert. The ALJ is only required to rely on answers to hypotheticals that are supported by evidence in the record, and those additional hypotheticals that Wright submitted were not supported by evidence in the record. The ALJ determined, based on the vocational expert's testimony, that there were jobs in significant numbers in the national economy that Wright could perform, and satisfied the commissioner's burden at step five, and therefore found that Wright was not disabled. The ALJ's decision was supported by substantial evidence and was free of legal error. Accordingly, we ask that the court affirm the commissioner's final decision, finding Wright not disabled and denying his claim for disability insurance benefits. Thank you, Mr. Berman. I have one irrelevant question, or not really. Sure. Merit's question, which is, you mentioned you're representing the acting commissioner. Does that mean that Ms. Colvin is no longer the appropriate party here? Correct. Nancy A. Berryhill is now the acting commissioner. Thank you. I wish Ms. Colvin well in her new career of not getting sued so much. Thank you, Your Honor. To the extent that we use the substantial evidence test, we have to decide whether or not a reasonable person, looking at all the evidence from both sides, could determine that Mr. Wright could perform light work. You are presumptively reasonable judges and reasonable people, and I don't think you can, based on this record before you. The consultative psychologist, after relying on her own tests and exams, found that his psych problems may significantly impair with his ability to function, and the judge used his medical opinions to overrule that of his own examiner, and really no weight should be given to the non-examining experts. If my client was credible, and he was, because there was no reason to discredit him with his support, then he could not do light work. Dr. Arguelles recommended he apply for disability. Now, that is not . . . he didn't say he can't work, but it's rare I've seen that a neurosurgeon would recommend that, and that's based on the severe limitations that he found. Pain is non-exertional, so the fact that somebody can walk for a few minutes does not mean that you can work and sustain work on a full-time basis for eight hours a day. It doesn't mean . . . he talked about his problems with focus and concentration, which is caused by pain, and that was very credible. It's very reasonable that a reasonable person, I think, would have to find that Mr. Wright would be off-task 10 to 15 percent of the time because of his pain. He tried to work. That doesn't discredit him. That credits him, that he went back and tried his heavy work and couldn't do it for two and a half weeks. That should not, as a matter of law, that should not be held against him that he tried that. Isn't that different work from what he was . . . from what it was determined he was capable of performing? Yes, right, but he tried to do his previous work, which is all he's done, and he wasn't able to do that work. He did try it, and he tried lighter work, and he couldn't do that. The judge did not give him a chance to explain why he was getting unemployment. The Cristado memo specifically says you're not incredible because you apply for unemployment, even though we all know that you have to certify you're able to work, and maybe he could have done sedentary work, but in this case, I think there's no substantial evidence that he could perform light work in this case, and I would ask you to remand this for a new hearing. Thank you. Thank you, Mr. Schneider. You're welcome. Thank you both. We'll reserve decision in this case.